UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JESSE C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02595-TAB-SEB |
| | ) |
| KILOLO KIJAKAZI[1], Acting Commissioner Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S REQUEST FOR REMAND**

**I.      Introduction**

Plaintiff Jesse C. appeals the Social Security Administration's denial of his application for disability insurance benefits.  Plaintiff argues that the Administrative Law Judge's determination of his residual functional capacity was not supported by substantial evidence because the ALJ "failed to rely on any medical opinion and instead made up the RFC whole cloth." [Filing No. 16, at ECF p. 3.]  The Commissioner responds that the ALJ retains exclusive authority to assess the RFC.  [Filing No. 17, at ECF p. 6.]  While this general proposition is true, the ALJ went a step further and evaluated raw medical data—various MRI imaging—that was not reviewed by any medical source.  The lack of proper review of Plaintiff's MRI results or development of the record may have caused him significant harm.  Therefore, Plaintiff's request for remand [Filing No. 16] is granted.

---

[1] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

**II.     Background**

On October 16, 2018, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. The SSA denied his claim initially and upon consideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. First, the ALJ noted that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022. Next, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 22, 2017, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: psoriatic arthritis, osteoarthritis, Dupuytren's Contracture of the bilateral hands, depression, anxiety, and obesity. [Filing No. 11-2, at ECF p. 19.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to function despite his limitations. The ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except:

> he can only occasionally climb ramps, stairs, ladders, ropes and scaffolds, can frequently reach, handle and finger with the bilateral upper extremities, can occasionally balance, stoop, kneel, crouch and crawl, must avoid concentrated exposure to extreme cold, vibration, and hazards such as moving machinery and unprotected heights, can perform only jobs that can be learned in 30 days or less, and can make only simple work related decisions.

[Filing No. 11-2, at ECF p. 22.]

At step four, the ALJ concluded that Plaintiff could not perform any past relevant work. The ALJ also noted that Plaintiff was 51 years old on the alleged disability onset date (an

2

individual closely approaching advanced age), had a limited education, and was able to communicate in English.  At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: hand packager, rental clerk, and restaurant host. Accordingly, the ALJ concluded that Plaintiff was not disabled.

**III.    Discussion**

Plaintiff argues that the ALJ erred by failing to rely on any medical opinion in determining his RFC and instead "made up the RFC whole cloth."  [Filing No. 16, at ECF p. 12.] The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

In this case, the state agency consultants at both the initial level in January 2019, and reconsideration level in March 2019, determined that there was insufficient evidence to evaluate Plaintiff's claim for disability benefits.  [Filing No. 11-3, at ECF p. 8-9, 18-19.]  However, the ALJ did not find their assessments persuasive and concluded that while Plaintiff "may have failed to return forms, he has provided sufficient information from his medical sources to

evaluate his claim, as his medical records contain diagnoses, imaging studies and physical exam findings." [Filing No. 11-2, at ECF p. 28.]

Plaintiff argues that the ALJ played doctor by relying on raw medical data outside his purview. [Filing No. 16, at ECF p. 14.] The ALJ cannot interpret medical imaging without medical opinion. *See, e.g., McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) ("[A]n ALJ may not play doctor and interpret new and potentially decisive medical evidence without medical scrutiny." (Internal citation, quotation marks, and brackets omitted)); *Amy C. v. Saul*, No. 1:19-cv-4145-TAB-JRS, 2020 WL 4915414, at *3 (S.D. Ind. Aug. 21, 2020) ("[I]t is not clear from the ALJ's decision, the record, or the briefing whether the state agency physicians reviewed the July 2013 MRI results. . . . Thus, the Court cannot determine whether the MRI was properly reviewed by a medical expert."). Plaintiff points out that the medical record contains a "plethora of medical imaging," including: an x-ray of his right elbow on November 16, 2018 [Filing No. 11-7, at ECF p. 135]; cervical spine imagining from November 16, 2018 [Filing No. 11-7, at ECF p. 136], and January 24, 2019 [Filing No. 11-7, at ECF p. 253]; and thoracic spine imaging on November 16, 2018 [Filing No. 11-7, at ECF p. 137], January 24, 2019 [Filing No. 11-7, at ECF p. 255], and August 15, 2019 [Filing No. 11-7, at ECF p. 195-96]. Plaintiff argues that no medical provider viewed this raw medical data and provided findings.

In response, the Commissioner claims that Plaintiff's "entire argument is predicated on the false assumption that an ALJ's findings must always be directed by the opinion of a physician[,]" which conflicts with the recognized notion that the ALJ has exclusive authority to assess a Plaintiff's RFC. [Filing No. 17, at ECF p. 5-6.] In addition, the Commissioner paints a very different picture regarding the ALJ's treatment of medical imaging. The Commissioner points to various treatment records of specialists who evaluated imaging and made treatment

4

recommendations based, at least in part, on their review of Plaintiff's medical imaging.  For instance, rheumatologist Dr. Kristine Rea reviewed Plaintiff's 2019 x-ray reports and recommended injections.  [Filing No. 11-7, at ECF p. 267, 274, and 276.]  In late 2019, another rheumatologist, Dr. Methee Srivatana, reviewed Plaintiff's imaging, discussed with Plaintiff that he could not make a definitive diagnosis regarding inflammatory arthritis, but advised Plaintiff about a possible trial of steroid injections.  [Filing No. 11-8, at ECF p. 95.]  Orthopedic surgeon Dr. Timothy Dicke saw Plaintiff in December 2019 and noted examination findings from X-rays of both of Plaintiff's elbows and hands in September 2019.  [Filing No. 11-8, at ECF p. 52-54.]  Dr. Dicke noted treatment options were available, including additional intervention and possibly surgery, and stated that Plaintiff's joint pain could significantly improve if he got an inflammatory condition under control with a rheumatologist.  [Filing No. 11-8, at ECF p. 54.]  Finally, podiatrist Dr. Brandon Baker reviewed a December 2019 x-ray of Plaintiff's feet and advised him to use a topical compound cream for pain and inflammation to treat midfoot arthritis.  [Filing No. 11-8, at ECF p. 115.]  Thus, the Commissioner argues that the ALJ properly relied on Plaintiff's medical sources, rather than making his own assumptions about the imaging result, and "it is only when the ALJ's conclusion is not supported by any medical evidence in the record that the ALJ has inappropriately played doctor."  *Kelli H. v. Saul*, No. 1:19-cv-3125-TAB-JMS, 2020 WL 1501877, at *3 (S.D. Ind. Mar. 30, 2020).

      The ALJ's decision contains both direct references to the various medical imaging in the record and a recap of Plaintiff's various visits to his medical providers.  The Commissioner contends that Plaintiff cannot cite to any instance where the ALJ actually interpreted raw medical data independently from other medical evidence, or in such a way that it led to erroneous conclusions regarding Plaintiff's functional abilities.  [Filing No. 17, at ECF p. 9.]  Rather, the

5

Commissioner argues that Plaintiff cites to the mere existence of various imaging reports, without establishing how the ALJ's analysis was flawed.

In reply, however, the Plaintiff reiterates various medical imaging studies in the record that neither the state agency consultants nor any other medical professional rendered an opinion on, including January 2019 and August 2019 MRI and imaging of Plaintiff's cervical and thoracic spine. [Filing No. 18, at ECF p. 2.] The January 24, 2019, cervical spine imaging showed multilevel marginal osteophyte formation from C3-C4 through C6-C7 and multilevel uncovertebral hypertrophy at C4-C5, C5-C6, and C6-C7. [Filing No. 11-7, at ECF p. 253.] Plaintiff's thoracic spine imaging on that date showed mild multilevel degenerative disc disease evidenced by marginal osteophyte formation throughout the mid to lower thoracic spine and multilevel degenerative cervical spondylosis. [Filing No. 11-7, at ECF p. 255.] Plaintiff's MRI from August 2019 of the thoracic spine showed: disc space narrowing at the T4-T5, T5-T6, T6-T7, T7-T8, T8-T9, T10-T11, and T11-T12; marginal osteophyte formation at the T4-T5, T5-T6, T6-T7, T7-T8, T8-T9, T9-T10, T10-T11, and T11-T12; and minimal disc bulge at the T8-T9 and T9-T10. [Filing No. 11-7, at ECF p. 195-96.]

In addition, Plaintiff notes that the ALJ stated in his decision that "the medical record does not document ongoing, disabling pain that the claimant alleges *and imaging studies have not found significant deficits*." [Filing No. 11-2, at ECF p. 27] (emphasis added). Plaintiff argues that the ALJ's statement that imaging studies did not indicate significant deficits went a step too far and amounted to the ALJ interpreting raw medical data never evaluated by a medical professional. Finally, Plaintiff argues that much of the medical imaging studies were obtained after the state agency consultants determined there was insufficient evidence. [Filing No. 18, at ECF p. 3.] The state agency consultants reached that determination in January 2019 at the initial

6

level and in March 2019 at the reconsideration level, and the latest MRI imaging is from August 2019.

The Commissioner makes several arguments in support of the ALJ's decision. As the Commissioner correctly argues, it does appear that the ALJ reviewed the medical record in full, as the ALJ's decision notes Plaintiff's treatment and consultations with his primary care providers, rheumatologists, orthopedic specialists, and podiatrist. And the ALJ explained his reasoning for concluding that Plaintiff's condition was not disabling in light of: (1) the examination findings showing he still had functional use of his hands, full grip strength, and normal range of motion; (2) the indications in the record that mild medication and injections that helped with Plaintiff's pain; and (3) the fact that Plaintiff was often observed to be in no distress at his appointments. However, Plaintiff raises valid concerns regarding the ALJ's conclusion that Plaintiff's imaging studies did not find significant deficits, and the lack of evaluation by a medical provider of various imaging in the record. Moreover, the record lacked any medical opinion regarding Plaintiff's functionality. *Cf. McHenry*, 911 F.3d at 871 (ALJ impermissibly assessed the claimant's MRI report on his own by comparing the test results with earlier treatment records).

Plaintiff argues that in the absence of medical opinion, "the ALJ should have contacted one of Plaintiff's many treating medical sources or in the alternative order[ed] a consultative examination." [Filing No. 16, at ECF p. 15.] The ALJ has various options, and broad discretion, and it is not the role of the Court to tell ALJs exactly how they ought to evaluate a particular SSA application. In addition, the Commissioner aptly notes that Plaintiff does not argue that medical evidence existed that both he and the ALJ failed to obtain. Rather, during the hearing before the ALJ, Plaintiff's attorney confirmed that the record was complete. [Filing No. 11-2, at

7

ECF p. 39-41.] No legal authority required the ALJ to seek medical opinions from treating providers. Obtaining medical opinions is Plaintiff's burden. *See* 20 C.F.R. § 404.1512(a). Plaintiff did not submit an opinion by his own treating medical sources. Nevertheless, the lack of medical opinions in the record, and the fact that there is medical imaging in the record that was not reviewed by a medical professional, support the conclusion that the ALJ improperly relied on his lay opinion.

Moreover, the ALJ's error may have caused Plaintiff significant harm. *See, e.g., Amy C.*, No. 1:19-cv-4145, 2020 WL 4915414, at *3 ("Plaintiff also reasonably argues that the lack of proper review of her most recent MRI results may have caused her significant harm."). Plaintiff argues that the ALJ's failure to adequately develop the record is harmful because the ALJ found Plaintiff had severe impairments of psoriatic arthritis, osteoarthritis, Depuytren's Contracture of the bilateral hands, depression, anxiety, and obesity, which would have some limitations on his ability to work, but there was no medical opinion regarding the extent of Plaintiff's limitations. [Filing No. 16, at ECF p. 16.] *See, e.g., Lori P. v. Saul*, No. 1:19-cv-875-DLP-SEB, 2020 WL 967107 (S.D. Ind. Feb. 28, 2020), at *8 ("Although a claimant has the burden to prove disability, the ALJ has an independent duty to develop a full and fair record. . . . A full and fair record will provide the ALJ with sufficient facts on which to make an informed decision, and it will also demonstrate that her decision is supported by substantial evidence. An ALJ's failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence, if the claimant can demonstrate prejudice." (Internal citations omitted)). For similar reasons, this case is remanded for proper consideration of the raw medical data in the record and further development of the record in relation to the question of Plaintiff's functionality.

**IV.     Conclusion**

For reasons stated above, Plaintiff's motion for remand [Filing No. 16.] is granted.

Date: 11/9/2021

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email